IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**HENRY WATSON,**

    **Plaintiff,**

vs.                                      No.  99cv1232 LH/JHG

**KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

    This matter is before the Court on Plaintiff's (Watson's) Motion to Reverse or Remand Administrative Decision, filed August 2, 2000.  The Commissioner of Social Security issued a final decision denying Watson's applications for disability insurance benefits and supplemental security income.  The Court, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion is not well taken and should be DENIED.

    Watson, now fifty-one years old, filed his application for disability insurance benefits and supplemental security income on July 16, 1996, alleging a disability which commenced December 1, 1995, due to diabetes mellitus, blurred vision, chronic kidney infections, chronic ankle pain, residuals of an aortic valve replacement surgery, chest pain, and numbness and pain in his thighs. He has a high school education and vocational training as an automotive technician with past relevant work as a custodian and bus driver.  The Commissioner denied Watson's applications for

disability insurance benefits and supplemental security income both initially and on reconsideration.

After conducting an administrative hearing, the Commissioner's Administrative Law Judge (ALJ) found Watson's impairments did not meet or equal the listings. The ALJ determined he retained the residual functional capacity for light work. The ALJ found Watson's nonexertional factors did not significantly erode his work capacity. The ALJ further found Watson's testimony of symptoms and functional restrictions were not supported by the evidence to the disabling degree alleged and lacked credibility. Thus, the ALJ concluded Watson was not disabled within the meaning of the Social Security Act. The Appeals Council denied Watson's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Watson seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42

2

U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse or remand the administrative decision, Watson argues the ALJ erred in failing to produce expert vocational testimony when his residual functional capacity (RFC) is diminished by both exertional and nonexertional impairments and erred in not requiring the consultative physician to make a complete RFC assessment pursuant to 20 C.F.R. § 404.1519n(c)(6).

The ALJ found Watson was able to perform his past relevant work as a custodian and bus driver and retained the residual functional capacity to perform light work.[1] Watson argues the

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these

ALJ erred in failing to produce expert vocational testimony when his residual functional capacity (RFC) is diminished by both exertional and nonexertional impairments.  However, the ALJ discussed in his decision the evidence relating to Watson's allegations of nonexertional impairments and dismissed them as not credible.  Tr. 16.  The ALJ's conclusion is supported by substantial evidence.  Although Watson complained of hand tingling on September 19, 1995, a later visit on February 29, 1996, indicated he was not suffering from any abnormal sensations such as numbness, burning, tingling or pain.  Tr. 187.  On August 8, 1995,  a public health nurse visited Watson at his place of employment and he complained of shoulder pain and loss of feeling in his fingers.  Tr. 194.  On August 14, 1995, a physician examined Watson for shoulder and elbow pain and for tingling in his left hand.  Tr. 196.  The physician's examination indicated the neurological findings were normal.  *Id.*   On February 23, 1996, x-rays were taken of Watson's left shoulder which indicated "negative left shoulder."  Tr. 220.  On January 9, 1996, chest x-rays were taken after Watson complained of chest pain.  Tr. 221.  The radiologist found "no acute cardiopulmonary disease."  *Id.*     On March 18, 1996, Watson had a treadmill stress echocardiogram done for complaints of "recent arm pain."  Tr. 224.  The results of the stress test indicated the following: (1) no chest or arm pain; symptomatically negative for exercise induced ischemia; (2) normal functional aerobic capacity; (3) normal heart rate response; and (4) normal blood pressure response.  Tr. 225.  The physician also commented that "[t]he patient's recent arm pain complaint was not reproduced and there was no specific abnormalities to suggest development of significant coronary artery disease."  *Id.*   Except for Watson's reporting kidney

---

activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  `See 20 C.F.R. § 404.1567(b).`

infections, blurred vision, tailbone and right groin pain, and right ankle pain to Dr. Herrera, the DDS consultant, the record is devoid of any evidence that Watson suffers from kidney problems, right ankle pain, or tailbone and right groin pain. Tr. 261. Dr. Herrera's physical exam revealed "Sensory perception was intact, and there was no evidence of loss of sensation in the lower extremities." Tr. 262. Dr. Herrera also noted 20/30 far vision bilaterally. *Id.* Dr. Herrera diagnosed Watson as suffering from frequent kidney and renal infections. Tr. 263. However, there is no evidence of kidney problems in the record. Accordingly, the Court finds that the ALJ finding that Watson's testimony of symptoms and functional restrictions was not credible is supported by the record thus the ALJ was not required to produce expert vocational testimony.

Watson next argues the ALJ erred in not requiring the consultative physician to make a complete RFC assessment pursuant to 20 C.F.R. § 404.1519n(c)(6). Watson claims Dr. Herrera failed to include a statement of her opinion as to Watson's ability to do work-related activities despite his impairments. This argument is without merit. Section 404.1519n(c)(6) specifically states, "Although we will ordinarily request as part of the consultative examination process, a medical source statement about what you can still do despite your impairment(s), the absence of such a statement in a consultative examination report will not make the report incomplete." In her report, Dr. Herrera opined the following:

> Medical Source Statement Regarding Ability To Do Work-Related Activities:
> 1. Lifting and carrying are limited by pain more so than by function. Visual acuity may also limit his ability to lift due to lack of near visual perception required in lifting.
> 2. Standing, walking and sitting are limited by pain, but not by function.
> 3. Other parameters limiting are those that would place him at risk for being cut or bruised, with his need for anticoagulants on a long-term ongoing basis. This may be a problem. He is also limited somewhat by jobs that would not let him take his

5

medications at regular intervals, causing problems with blood sugar levels and variable visual acuity, based on this.

The Court finds that Dr. Herrera's report was more than adequate to assist the ALJ in reaching his decision. The Court further finds that the record as a whole supports the ALJ's finding that Watson's alleged impairments would not preclude his ability to perform his past relevant work. Accordingly, the Court finds that the ALJ applied correct legal standards and substantial evidence supports the decision.

## RECOMMENDED DISPOSITION

The ALJ applied correct legal standards and substantial evidence supports the decision. The motion to reverse or remand administrative agency decision should be denied and this case should be dismissed.

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such

proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.